ROBERT FARRIS-OLSEN
MORRISON, SHERWOOD WILSON & DEOLA, PLLP
401 North Last Chance Gulch
P.O. Box 557, Helena, Montana 59624-0557
Helena, MT  59601
(406) 442-3261 Phone
(406) 443-7294 Fax
rfolsen@mswdlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| HEIDI HARRINGTON,<br><br>Plaintiff,<br><br>v.<br><br>MADISON COUNTY, MADISON COUNTY SHERIFF'S OFFICE, MADISON COUNTY ATTORNEY'S OFFICE, DOUG YOUNG, MADISON VALLEY HOSPITAL, INC., d/b/a MADISON VALLEY MEDICAL CENTER and JOHN DOES 1-10.<br><br>Defendants | Cause No.: 21-cv-00015-BMM<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Comes now Plaintiff, Heidi Harrington, through counsel, and for her complaint against Madison County, Madison County Sheriff's Office, Madison County Attorney's Office, Doug Young (collectively "County Defendants"), and Madison Valley Hospital, Inc., d/b/a Madison Valley Medical Center ("MVMC"), states and alleges as follows.

## INTRODUCTION

This case concerns Madison County illegally obtaining Ms. Harrington's medical records while she was incapacitated in the hospital. After Ms. Harrington attempted to die by suicide, she was arrested by the Defendants and taken to the Madison Valley Medical Center for medical help. While there, Deputies with the Madison County Sheriff's Office joked about her incapacitated condition and played along when nurses asked them to guess her blood alcohol content. This improper behavior caused the nurses to provide Ms. Harrington's blood alcohol content; information it was not authorized to release.

Instead of leaving the issue and following proper procedures to obtain Ms. Harrington's medical records, the Deputies requested all of Ms. Harrington's records. Further, when the treating Doctor questioned the Deputies, they advised him that such production was acceptable. This was patently untrue. The treating physician then produced the documents, which were promptly turned over to the County attorney. At the time the County attorney received the medical records, no court order or subpoena had authorized their release.

Obtaining Ms. Harrington's records without this authority violates her rights to privacy in her medical information under both the U.S. and State Constitution.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Heidi Harrington is a resident of Forsyth, Rosebud County, Montana.

2. Madison County is a political subdivision of the State of Montana that is authorized to control and maintain the Madison County Sheriff's Office (MCSO) and the Madison County Attorney's Office ("County Attorney").

3. MCSO acts on behalf of Madison County in the area of law enforcement.

4. The County Attorney Prosecutes crimes on behalf of the County and State. Accordingly, the County is ultimately responsible for the MCSO, the County Attorney, and their actions.

5. MVMC is medical care facility located in Ennis, Montana. At the time of the events alleged herein, it employed Dr. David Newton, and Nurse Linette Tingey.

6. John Does 1-10 are other unnamed officers, or agents of Madison County that have yet to be identified but may be liable for their actions.

7. This Court has subject matter jurisdiction of the alleged federal civil rights violations pursuant to 28 U.S.C. § 1343(a)(3). The Court may also exercise supplemental jurisdiction over Ms. Harrington's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is appropriate pursuant to Local Rule 3.2(b)(1) because the alleged tort took place in Madison County, which is within the Butte Division, L.R. 1.2(b)(c)(2).

## FACTS

9. Early in the morning of March 17, 2020, Ms. Harrington overdosed on medication in an attempt to die by suicide. It nearly worked. Fortunately, Ms. Harrington survived, but due to the actions of the MCSO and the County Attorney,

which illegally obtained her medical records, her emotional distress and mental anguish has become significantly worse. So much so, that she is afraid to obtain medical care.

10. MCSO's participation in Ms. Harrington's situation began at approximately 1:45 a.m. on or about March 17, 2020, when an Emily Pendleton reported she and an acquaintance, Rozelyn Claypool, had gotten into an argument with Ms. Harrington.

11. That night, Ms. Harrington had been babysitting for Ms. Claypool, who was out with Ms. Pendleton. When Ms. Claypool and Ms. Pendleton arrived home, an argument ensued.

12. Subsequent to, or during, the argument, Ms. Harrington consumed a large amount of medication. She then departed in her car. She had also consumed alcohol at some point.

13. Shortly after the report from Ms. Pendleton, MCSO also received a call from Moritz Espy, who explained that Ms. Harrington had overdosed on medication and was headed to the McAllister Inn.

14. At about 2:15 a.m., Deputy Sheriffs Jackson Goodman and Doug Young made contact with Ms. Harrington in the parking lot of the McAllister Inn. Ms. Harrington was in her car, unresponsive, with the engine running and the headlights on.

15. Deputies Goodman and Young attempted to wake Ms. Harrington by knocking on the car windows and by verbally trying to make contact with her. These efforts were unsuccessful.

16. Deputy Young, looking through the windshield, could see that Ms. Harrington had very shallow breaths and was barely moving. It was clear to Deputy Young that Ms. Harrington was alive, but in need of medical treatment, so an ambulance was called.

17. The Deputies continued trying to wake Ms. Harrington, to no avail. They then made the decision to break a window to provide assistance. Deputy Young used his bolt cutters to break the window. Deputy Goodman then unlocked the door to access Ms. Harrington, who was slightly responsive.

18. Deputy Young had Ms. Harrington walk to his vehicle in an effort to keep her warm. On the walk, Ms. Harrington had some difficulties and, ultimately, Deputy Young had to assist her.

19. Once at Deputy Young's vehicle, Ms. Harrington had difficulty responding to Deputy Young. She was mumbling and was not making sense. Deputy Young could smell an odor of alcohol on her breath.

20. Deputy Young also discovered a can of beer in Ms. Harrington's car that was approximately one-third to one-half full.

21. The Ambulance arrived at approximately 2:42 a.m. and transported Ms. Harrington to the Madison Valley Medical Center ("MVMC").

22. MVMC is a covered entity under the Health Insurance Portability Act and Accountability Act (HIPAA).

23. Deputies Goodman and Young ultimately went to the hospital. They claim to have assisted staff with preventing Ms. Harrington from tampering with her

5

intravenous line (IV), and other medical equipment. After assisting subdue Ms. Harrington, there was no further need for either Deputy Goodman or Young to remain in the room where Ms. Harrington was being treated. However, they continued to remain and observe her treatment.

24. At one point, while Ms. Harrington was being treated by Dr. David Newton, Deputy Young approached Ms. Harrington for no discernable purpose.

25. During Ms. Harrington's treatment, an emergency room nurse, Lynette Tingey, shared Ms. Harrington's blood alcohol content ("BAC") with Deputy Goodman. At no point had Ms. Harrington consented to this release of her medical information.

26. Subsequently, Ms. Tingey asked Deputy Young to guess Ms. Harrington's BAC. Initially Deputy Young refused, but ultimately engaged, and guessed the BAC was 0.300. In response, Ms. Tingey revealed Ms. Harrington's BAC was 0.169. Deputy Young and Ms. Tingey continued discussing Ms. Harrington's blood test results.

27. At no point did Deputy Goodman or Young advise Ms. Tingey to stop. Nor did they refuse to engage in her discussions.

28. After the Deputies obtained Ms. Harrington's BAC from Nurse Tingey, and prior to departing, Deputy Young requested that Dr. Newton provide him with his notes regarding Ms. Harrington.

29. At the time Deputy Young requested the notes, he had not applied for, or received, any type of warrant or subpoena.

30. At the time Deputy Young requested the notes, no court order or administrative request had been issued or authorized, requiring or permitting the disclosure of Ms. Harrington's medical records.

31. Dr. Newton initially resisted providing the medical records, but Deputy Young advised Dr. Newton that he had received doctors notes in previous situations.

32. Dr. Newton then advised Deputy Young that the notes would be available later that day – March 17, 2020.

33. At approximately 7:00 p.m., on or about March 17, 2020, Deputy Young returned to MVMC to pick up the medical records from Ms. Harrington's treatment.

34. The medical records contained more information than Deputy Young had requested, but he did not return nor leave behind the medical records he had not requested.

35. The medical records Deputy Young took consisted of ten pages.

36. On or about March 25, 2020, the County Attorney's office received copies of the medical records obtained by Deputy Young.

37. At the time the County Attorney's office received copies of the medical records, they did not have a warrant, subpoena, or any other authorization to receive such information.

38. The medical records indicated that Ms. Harrington also had other drugs in her system.

39. On or about March 27, 2020, the County Attorney, through Deputy Justin Ekwall, applied for an investigative subpoena to obtain the medical records from MVMC.

40. Judge Luke Berger granted the request for a subpoena.

41. A few days later, on or about April 2, 2020, the County Attorney filed a Complaint against Ms. Harrington alleging that she had committed the crime of a first offense for driving under the influence.

42. The Complaint was filed in the Justice Court of Madison County, Cause No. CR 565-2020-0000001.

43. The complaint was based on the medical records that had been provided to the County Attorney prior to any investigative subpoena being issued.

44. On or about November 6, 2020, the Justice Court dismissed the criminal case finding that MCSO and the County Attorney obtained Ms. Harrington's medical information without proper legal authority.

45. The County did not appeal the Justice Court decision, and the time to appeal elapsed pursuant to § 46-17-311(2), MCA.

46. Throughout the above, Ms. Harrington had an expectation that her private medical records would be kept private, absent some court order or other court process permitted under State or Federal law.

47. Ms. Harrington's expectation of privacy is recognized as objectively reasonable under both State and Federal law.

48. HIPAA was passed in 1996 to protect an individual's health information.

49. Under HIPAA, the U.S. Department of Health and Human Services (HHS) implemented a series of rules. Relevant, here, is the Privacy Rule.

50. The Privacy Rule, *inter alia*, attempts to balance an "individual's privacy while allowing important law enforcement functions to continue." HHS, *When does the Privacy Rule allow covered entities to disclose protected health information to law enforcement officials*, https://www.hhs.gov/hipaa/for-professionals/faq/505/what-does-the-privacy-rule-allow-covered-entities-to-disclose-to-law-enforcement-officials/index.html (last accessed December 31, 2020).

51. In that balancing effort, the Rule permits certain disclosures to law enforcement, but only under certain circumstances, including complying with a court-ordered warrant, a subpoena or summons issued by a judicial officer, a grand jury subpoena, or another written administrative request. 45 C.F.R. § 164.512(f)(1). An administrative request must be made in writing. 45 C.F.R. 164.514(h)(2)(i)(A).

52. If a disclosure of health information to law enforcement is made outside the bounds of these exemptions, and without the consent of the patient, it is improper.

53. In particular, such a disclosure, if done at the request of law enforcement, implicates a patient's constitutional right to informational privacy in their medical records, and against illegal searches and seizures.

54. Similar to HIPAA, Montana has its own healthcare information privacy requirements. Sections 50-16-801 *et seq.*, MCA. Montana's laws were enacted to

provide a greater level of protection of an individual's privacy interest and to prevent harm associated with an improper release of information. Section 50-16-801, MCA.

55. To that end, Montana law prohibits disclosure of health information to law enforcement except as required by law. Section 50-16-805, MCA. Even then, the information cannot be used in any law enforcement proceeding without first obtaining an investigative subpoena. Section 50-16-811(1)(i), MCA.

56. As a corollary, law enforcement may not request such medical records without first obtaining an investigative subpoena. *See, e.g.*, § 46-4-301(3), MCA.

57. Put simply, healthcare information that was disclosed may not be used by law enforcement to obtain an investigative subpoena. Rather, an investigative subpoena must be issued first.

58. If that information is used outside the proper process, it implicates Montana's Constitutional rights to privacy, and against illegal searches and seizure. Section § 46-4-301(3), MCA (medical records are "constitutionally protected materials."); *State v. Goetz*, 2008 MT 296, ¶ 39 ("the State may not invade an individual's privacy unless the procedural safeguards attached to the right to be free from unreasonable searches and seizures are met" (*citations and quotations omitted*).)

59. Montana's constitutional right of privacy, and against illegal searches and seizures, is more protective that the concomitant rights under the U.S. Constitution.

60. As a result of MCSO and the County Attorney's unpermitted access to Ms. Harrington's medical records, she suffered severe emotional distress.

## CLAIMS AGAINST THE COUNTY DEFENDANTS

## COUNT I – 42 U.S.C. § 1983

61. The preceding paragraphs are realleged as though set forth in full hereunder.

62. The United States Constitution protects a person's informational privacy in their medical records. *NASA v. Nelson*, 562 U.S. 134, 159, 131 S. Ct. 746, 763-64 (2011).

63. The Fourth Amendment to the U.S. Constitution also protects citizens against unreasonable searches and seizures.

64. Deputy Young violated Ms. Harrington's constitutional rights to informational privacy, and against illegal searches and seizures, when he engaged with Ms. Tingey in discussing Ms. Harrington's blood test results; when he requested Ms. Harrington's medical records without obtaining a warrant, subpoena, or other process; when he obtained the medical records from MVMC; and when he shared that information with the County Attorney Office.

65. At no time did Ms. Harrington give Deputy Young permission to access her records.

66. At all times, Deputy Young was acting under the color of state law.

67. Deputy Young's actions caused Ms. Harrington substantial harm.

## COUNT II – 42 U.S.C. § 1983 (*MONELL*)

68. The preceding paragraphs are realleged as though set forth in full hereunder.

69. Ms. Harrington possessed a constitutional right to privacy in her medical information. *NASA v. Nelson*, 562 U.S. 134, 159, 131 S. Ct. 746, 763-64 (2011).

70. The County Defendants have a policy or custom of requesting medical records prior to obtaining a subpoena, warrant or other court authority. This policy is evidenced by Deputy Young noting that he has in other instances asked for medical records prior to court order, and such are regularly provided.

71. This policy or custom amounts to a deliberate indifference to Ms. Harrington's constitutional rights – federal law makes clear that private medical information cannot be disclosed to law enforcement without the proper judicial process. The County's policy or custom of disregarding an individual's constitutional violations is deliberate, or at a minimum, reckless

72. The County also failed to train its employees as evidenced by Deputy Young's flagrant failure to obtain a warrant, subpoena, or other process prior to obtaining Ms. Harrington's medical records, and as he noted other individual's medical records.

73. Additionally, the County ratified Deputy Young's action by using the medical records he obtained without proper legal authority to then request an investigative subpoena.

74. Deputy Young was aware of the policy and explained that it was the basis for his request to Dr. Newton.

75. Defendant is, therefore, liable for the actions of Deputy Young under 42 U.S.C. § 1983.

## COUNT III – *DORWART* CLAIMS

76. The preceding paragraphs are realleged as though set forth in full hereunder.

77. The Montana Constitution protects individual's privacy, and protects them against illegal searches and seizures.

78. These rights encompass an individual's medical information. *State v. Bilant*, 2001 MT 249, ¶ 17 ("medical records are quintessentially private and deserve the utmost constitutional protection." *Citing State v. Nelson*, 283 Mont. 231, 242, 941 P.2d 441, 448 (1997).)

79. Madison County violated Ms. Harrington's constitutional rights by obtaining her medical records without first obtaining her consent or an investigative subpoena.

80. As a result of Madison County's actions, Ms. Harrington suffered injuries.

**COUNT IV – Negligence**

81. The preceding paragraphs are realleged as though set forth in full hereunder.

82. Defendants owed Ms. Harrington a duty to exercise reasonable care in engaging in their law enforcement work. One of those duties includes complying with Montana's laws regarding accessing an individual's private medical information.

83. Defendants breached their duties, *inter alia*, by engaging with Ms. Tingey in discussing Ms. Harrington's blood test results; requesting Ms. Harrington's medical records without obtaining a warrant, subpoena, or other process; obtaining the medical records from MVMC without complying with Montana law; and sharing that information with the County Attorney without following the process proscribed by Montana law.

84. Defendants' breaches caused Ms. Harrington's damages.

85. Defendants are, therefore, liable for their negligent acts.

### COUNT V – NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

86. The preceding paragraphs are realleged as though set forth in full hereunder.

87. As a result of Defendants' actions, Ms. Harrington suffered serious or severe emotional distress. For example, she was recently diagnosed with breast cancer, and as a direct result of the Defendants' actions, she suffers severe anxiety, fear, and emotional duress when she must go to the hospital for treatment. These reactions continue to occur despite the Defendants actions occurring approximately ten months ago.

88. Ms. Harrington's reaction is reasonably foreseeable. Defendants purposefully accessed her medical records without her permission, and during the process, they engaged in a joking-type discussions about her blood alcohol content and other medical conditions. She had just tried to die by suicide, and law enforcement acted with complete disregard to her wellbeing.

89. Defendants' actions were negligent and/or intentional. Defendants chose to engage with Ms. Tingey about Ms. Harrington's medical records, and purposefully, without proper process, obtained Ms. Harrington's medical records from MVMC.

90. Defendants are, therefore, liable for their negligent/intentional infliction of emotional distress.

### CLAIMS AGAINST MVMC

### COUNT VI – VIOLATION OF TITLE 50

91. The preceding paragraphs are realleged as though set forth in full hereunder.

92. Dr. Newton, Nurse Tingey, and other staff members, while in the course and scope of their employment with MVMC, shared Ms. Harrington's private medical information in violation of §§ 50-18-801, *et seq.*, MCA, with Deputies Goodman and Young.

93. The disclosure was willful or grossly negligent, as evidenced by Nurse Tingey's joking about Ms. Harrington's BAC.

94. As a result of these violations, Ms. Harrington is entitled to her pecuniary damages and up to $5,000.

## COUNT VII – INVASION OF PRIVACY

95. The preceding paragraphs are realleged as though set forth in full hereunder.

96. MVMC's actions, as described above, and the conduct of its employees, amounts to an invasion of Ms. Harrington's privacy.

97. As a result of MVMC's actions, Ms. Harrington endured mental suffering, shame, and humiliation.

98. MVMC is liable for its invasion of Ms. Harrington's privacy.

## COUNT VIII - NEGLIGENCE

99. The preceding paragraphs are realleged as though set forth in full hereunder.

100. MVMC owed Ms. Harrington a duty to exercise reasonable care in disseminating private medical information.

101. MVMC breached its duty *inter alia*, providing Ms. Harrington's private medical information to law enforcement both while Ms. Harrington was being treated, and after.

102. MVMC's breach caused Ms. Harrington's damages.

103. MVMC, therefore, liable for its negligent acts.

## COUNT IX – NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

104. The preceding paragraphs are realleged as though set forth in full hereunder.

105. As a result of MVMC's actions, Ms. Harrington suffered serious or severe emotional distress. For example, she was recently diagnosed with breast cancer, and due to the Defendants' actions, she suffers severe anxiety, fear, and emotional duress when she must go to the hospital for treatment. These reactions continue to occur despite the event under discussion occurring many months ago.

106. Ms. Harrington's reaction is reasonably foreseeable. Defendants purposefully accessed her medical records without her permission, and during the process, they engaged in a joking-type discussions about her blood alcohol content and other medical conditions. She had just tried to die by suicide, and law enforcement acted with complete disregard to her wellbeing.

107. MVMC actions were negligent and/or intentional. MVMC chose to engage with law enforcement about Ms. Harrington's medical records, and purposefully, without proper process, provided her medical records to law enforcement.

108. MVMC is, therefore, liable for their negligent/intentional infliction of emotional distress.

## COUNT X – CONSUMER PROTECTION ACT

109. The preceding paragraphs are realleged as though set forth in full hereunder.

110. Ms. Harrington was a consumer under the Montana Consumer Protection Act (MCPA).

111. MVMC was engaged in trade or commerce.

112. MVMC engaged in unfair or deceptive acts or practices, as prohibited by the MCPA. Those acts include, but are not limited to, sharing private medical information with law enforcement without the proper authority.

113. MVMC is, therefore, liable for its violations of the Montana Consumer Protection Act.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff Heidi Harrington requests a jury trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1. Actual and punitive damages.

2. Statutory damages, including treble damages under the MCPA.

3. Attorneys' fees, statutory fees and costs pursuant to 42 U.S.C. § 1988.

4. Such other and further relief, including injunctive relief, as may be necessary to effectuate the Court's judgment or as the Court otherwise deems just and equitable.

Dated this  29  day of June, 2021.

                MORRISON, SHERWOOD, WILSON & DEOLA

        By:    /s/ Robert Farris-Olsen
             Robert Farris-Olsen
             *Attorneys for Plaintiff*